UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

PAUL PENKALSKI,

        Plaintiff,

  v.                                  WIWD Case No. 08-C-544

MARK GUTHIER,

        Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Paul Penkalski brought this pro se civil rights action under 42 U.S.C. § 1983 against Mark Guthier, Director of the University of Wisconsin Union, alleging the Guthier violated his constitutional rights by revoking his Union membership without due process. The matter is before the Court on Guthier's motion for summary judgment. Guthier seeks summary judgment on the grounds that Penkalski's claim is barred by the doctrine of claim preclusion and that the undisputed evidence establishes as a matter of law that he did not violate Penkalski's due process claim. Because I conclude that Penkalski's claim is precluded, I do not reach the merits. Guthier's motion will be granted, and the case dismissed.

**BACKGROUND**

Penkalski purchased a lifetime membership in the Union, which is the social, cultural and recreational center of the university community. Membership in the Union provides benefits and privileges unavailable to the general public, such as opportunities to participate in outdoor activities,

free movies and lectures, free use of the Union's rooms for special events, and "mini-courses" on various topics.

On June 16, 2004, Roger Vogts, the Union's Assistant Facilities Director, wrote Penkalski to inform him that his Union membership was revoked as a result of Penkalski's involvement in "an incident of inappropriate and criminal behavior" on the Union's premises on March 18, 2004. (Guthier Aff. Ex. E.) The University of Wisconsin-Madison Police Department reported that Penkalski had placed a threatening telephone call from a telephone at the Union. (DPFOF ¶ 28.) Guthier wrote Penkalski on August 5, 2004, and re-instated his membership on a probationary basis until December 31, 2004, based upon the fact the revocation was not in accordance with the Union's "standard operating procedures." (Guthier Aff. Ex. F; Penkalski Aff. ¶ 13.)

On June 10, 2005, Guthier sent Penkalski an e-mail that identified additional problematic behavior and instructed him to change his behavior. (DPFOF ¶ 36; Guthier Aff. ¶ 28.) Though not entirely clear from the record, the problem seems to arise out of Penkalski's interaction with other Union members. Guthier met with Penkalski on July 11, 2005, and warned Penkalski that negative consequences would attend Penkalski's failure to modify his behavior. (DPFOF ¶ 37.) Shortly thereafter, Penkalski's membership in the Union's sailing club was revoked after he obtained a refund on a check he had written for dues and on which he had subsequently stopped payment. Penkalski responded with a flood of emails to various members and staff of the sailing club. On August 5, 2005, in response to a complaint from the sailing club, Guthier ordered Penkalski to refrain from contacting the Union staff except in their offices during business hours and to avoid contact with staff or members of the sailing club. Penkalski was also ordered not to go within 100 feet of the area of the Union occupied by the sailing club. (Guthier Aff. Ex. N.)

Relying on reports from university law enforcement, the veracity of which Penkalski disputes, Guthier concluded that Penkalski was violating the restrictions and decided to bring the matter to the attention of the Executive Committee of the Union Council. The Union Council Executive Committee met on September 16, 2005, to consider whether to revoke Penkalski's membership. Penkalski was notified in advance of the date, time and location of the meeting, but arrived between 15 and 20 minutes late, after the executive committee had already voted to revoke his membership. (DPFOF ¶ 53; Penkalski Aff. ¶ 28; Guthier Aff. ¶ 44.) Guthier notified Penkalski the same day that the council had revoked his membership. The reasons for the revocation were Penkalski's failure to adhere to the restrictions placed upon him by Guthier and his failure to make payment on two bad checks written to the Union. (Guthier Aff. Ex. M at 00037.) On October 4, 2005, Penkalski appealed his revocation to the Chancellor of the University of Wisconsin, John Wiley. (Guthier Aff. Ex. S.) Wiley denied the appeal on December 27, 2005, and indicated that Penkalski's revocation would remain effective for one year from that date. (*Id*.)

Penkalski thereafter filed two separate small claims actions against Guthier in state court. His first suit in Dane County Circuit Court case number 06-SC-7455 alleged, *inter alia*, that Guthier prevented him from entering the Union Council meeting on September 16, 2005, the meeting at which the executive committee decided to revoke his membership. (Guthier Aff. ¶ 7; Magnuson Aff. Ex. A.) Penkalski also alleged that Guthier made false statements to the police about him. (Guthier Aff. ¶ 7; Magnuson Aff. Ex. A.) The case was dismissed with prejudice and judgment entered in Guthier's favor on January 24, 2007. (Guthier Aff. ¶ 8.) Penkalski did not file a notice of appeal. (DPFOF ¶ 65.)

3

Penkalski's second lawsuit against Guthier in the Wisconsin courts was in Dane County Circuit Court case number 07-SC-3297, in which Penkalski made claims relating to the termination of his Union membership. (Guthier Aff. ¶ 4; Magnuson Aff. Ex. B.) On July 21, 2008, the court dismissed the suit with prejudice. (Guthier Aff. ¶ 5.) The court entered judgment in Guthier's favor on July 29, 2008. (*Id*.) Penkalski filed a notice of appeal on September 12, 2008, but has not yet filed his appellate brief. (*Id*. ¶ 6.) On September 16, 2008, Penkalski commenced this federal lawsuit by filing his complaint. (Doc. # 1.)

**ANALYSIS**

Guthier's first argument in support of his motion for summary judgment is that Penkalski's litigation in Dane County Circuit Court precludes Penkalski from getting a second bite at the apple in federal court. Under the principle of claim preclusion, which is embodied in the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). In order for the doctrine to apply, there must exist "(1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits." *Highway J Citizens Group v. United States Dept. of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006); *see also Okoro v. Bohman*, 164 F.3d 1059, 1062 (7th Cir. 1999) (noting that the doctrine precludes subsequent claims arising from the "same incident, events, transaction, circumstances, or other factual nebula as a prior suit that ha[s] gone to final judgment."). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters

reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979) (footnote omitted).

Under 28 U.S.C. § 1738, federal courts must give the judgments of state courts the same full faith and credit that those judgments would receive in the rendering state's courts, as long as the state judgment satisfied constitutional due process requirements. *See Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481-82 (1982). "This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). In Wisconsin, three factors must be present in order to preclude later action: (1) identity between the parties or their privies in the prior and present suits; (2) prior litigation resulted in a final judgment on the merits by a court with jurisdiction; and (3) identity of the causes of action in the two suits. *See Froebel v. Meyer*, 217 F.3d 928, 933 (7th Cir. 2000) (citing *Sopha v. Owens-Corning Fiberglas Corp.*, 230 Wis. 2d 212, 601 N.W.2d 627 (1999)).

In analyzing the third factor, whether the cause of action is the same in the two suits, Wisconsin adheres to the transactional approach. The Wisconsin Supreme Court has stated:

> Under this analysis, all claims arising out of one transaction or factual situation are treated as being part of a single cause of action. A transaction connotes a natural grouping or common nucleus of operative facts. To determine whether claims arise from one transaction, we may consider whether the facts are related in time, space, origin, or motivation. We have noted that under the transactional analysis, it is irrelevant that the legal theories, remedies sought, and evidence used may be different between the first and second actions.

*Wickenhauser v. Lehtinen*, 2007 WI 82, ¶ 30, 302 Wis. 2d 41, 734 N.W.2d 855 (quotation marks and citations omitted). Because Wisconsin follows the transactional approach, claim preclusion bars not only the re-litigation of claims actually litigated, but also the litigation of claims that could have been raised in a previous lawsuit but were not. *Lindas v. Cady*, 183 Wis. 2d 547, 558, 551

5

N.W.2d 458 (Wis. 1994) ("Under claim preclusion, or res judicata, 'a final judgment is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings.'") (quoting *DePratt v. West Bend Mut. Ins. Co.*, 113 Wis. 2d 306, 310, 334 N.W.2d 883 (Wis. 1983)).

Here, the first of the three claim preclusion factors applied in Wisconsin, identity of the parties, is plainly satisfied. Penkalski was the sole plaintiff and Guthier the sole defendant in both suits Penkalski brought in Dane County Circuit Court.

The second requirement, that the previous suits ended with final judgments on the merits by a court with jurisdiction, is also satisfied. Both cases ended with judgments in favor of Guthier, and while they were rendered by small claims courts, there is authority to suggest that $5,000 statutory limit on damages is a limit on recovery, not a limit on jurisdiction. *See Bryhan v. Pink*, 2006 WI App 111, ¶ 16, 294 Wis. 2d 347, 718 N.W.2d 112 ("The small claims award limitation is a limit on recovery, not a bar that denies the court jurisdiction over cases in which the plaintiff's actual damages exceed $5,000."). Additionally, as the Restatement (Second) of Judgments notes:

> [Claim preclusion] . . . is applicable although the first action is brought in a court which has no jurisdiction to give a judgment for more than a designated amount. When the plaintiff brings an action in such a court and recovers judgment for the maximum amount which the court can award, he is precluded from thereafter maintaining an action for the balance of his claim . . . . It is assumed here that a court was available to the plaintiff in the same system of courts--say a court of general jurisdiction in the same state--where he could have sued for the entire amount. . . . The same considerations apply when the first action is brought in a court which has jurisdiction to redress an invasion of a certain interest of the plaintiff, but not another, and the action goes to judgment on the merits. . . . The plaintiff, having voluntarily brought his action in a court which can grant him only limited relief, cannot insist upon maintaining another action on the claim.

RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. g (1982);[1] *see also Landess v. Schmidt*, 115 Wis. 2d 186, 192, 340 N.W.2d 213 (Wis. Ct. App. 1983) ("A plaintiff's claim is barred although he or she is prepared in the second action . . . to seek remedies or forms of relief not demanded in the first action."). Because Penkalski could have brought his previous suits in a forum that had authority to grant him full relief beyond the $5,000 small claims limitation, the final judgments rendered in his previous suits satisfy the final judgment requirement.

The third requirement, identity of the causes of action, is also met. Penkalski's claims against Guthier in case number 06-SC-7455 included claims that Guthier prevented him from entering a Union Council meeting on September 16, 2005, and that Guthier made false statements about him to university police. In case number 07-SC-3267, Penkalski sued Guthier for claims relating to the 2005 revocation of his Union membership. Paragraph 4 of Penkalski's complaint alleged that "On September 16, 2005, defendant unlawfully revoked plaintiff's Wisconsin Union membership and barred plaintiff from Wisconsin Union premises." (Magnuson Aff. Ex. B at 00067.) These two suits in state court and the action Penkalski brings here in federal court arise from the same "transaction or factual situation," *Wickenhauser*, 2007 WI 82 at ¶ 30, and one of the claims in the second state suit is the same as the claim upon which Penkalski proceeds in this federal case. Penkalski himself recognizes the similarity between his 2007 state suit and these proceedings, as he concedes that the cause of action in that state suit "does overlap" with this lawsuit. (Pl.'s Br. in Opp. at 2.)

---

[1] As defendant notes, Wisconsin courts have in the past adopted or relied on portions of the RESTATEMENT (SECOND) OF JUDGMENTS in addressing claim preclusion. *See, e.g., Winkenhauser*, 2007 WI 82, ¶ 37; *In re Estate of Rille ex rel. Rille*, 2007 WI 36, ¶ 48 n.24, 300 Wis.2d 1, 728 N.W.2d 693; *Landess v. Schmidt*, 115 Wis. 2d 186, 192, 340 N.W.2d 213 (Wis. Ct. App. 1983).

Because Wisconsin's three requirements for claim preclusion are satisfied, Penkalski's claim against Guthier is barred under the doctrine of claim preclusion. While Penkalski may be disappointed with the results of his state court litigation, he may not simply re-file the same case in federal court. His remedy is to appeal. The Court will therefore enter summary judgment in favor of Guthier and dismiss this action. Because the claim is precluded, the Court does not address Guthier's contention that he is entitled summary judgment on the merits. *See Durhan v. Neopolitan*, 875 F.2d 91, 96 (7th Cir. 1989) ("However, because res judicata barred the district court from relitigating this cause of action, it was erroneous to reach the merits of plaintiff's claim by deciding the issue of qualified immunity.") (citing *Gasbarra v. Park-Ohio Indus.*, 655 F.2d 119, 123 (7th Cir. 1981)); *United States v. Mathis Implement, Inc.*, 405 F. Supp. 2d 1101, 1107-08 (D.S.D. 2005) ("District Courts are required to consider preclusion matters before reaching the merits of a claim.") (citing *Peery v. Brakke*, 826 F.2d 740, 744 n.4 (8th Cir. 1987)); *Varner v. Reich*, No. 90-CV-1027E(F), 1995 WL 264670, at *1 (W.D.N.Y. Apr. 25, 1995) ("Because this Court concludes, as a matter of law, that the doctrine of claim preclusion bars the plaintiff's claims, summary judgment may be granted without reaching the merits of those claims.").

**THEREFORE IT IS ORDERED** that Guthier's motion for summary judgment is **GRANTED** and this matter is **DISMISSED**. The Clerk of Court shall enter judgment accordingly forthwith.

Dated this   19th   day of October, 2009.

    s/ William C. Griesbach  
    William C. Griesbach  
    United States District Judge